```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x  MEMORANDUM AND ORDER
MOHAMMAD MUKTADIR                                              Case No. 12-CV-2184 (FB) (RER)

                    Plaintiff,
     -against-

BEVACCO INC., and PETER SCLAFANI,
individually,

                    Defendants.
------------------------------------------------------------x
```

*Appearances:*

*For the Plaintiff:*
BRIAN S. ARCÉ, ESQ.
ADRIANE S. EISEN, ESQ.
ARCÉ LAW GROUP, P.C.
30 Broad Street, 35th Floor
New York, NY 10004

*For the Defendants:*
KEVIN S. O'DONOGHUE, ESQ.
HELBRAUN LEVEY & O'DONOGHUE, LLP
110 William Street, Suite 1410
New York, NY 10038

**BLOCK, Senior District Judge:**

      Plaintiff Mohammad Muktadir ("Muktadir") brings this action against defendants Bevacco Inc. ("Bevacco") and Peter Sclafani ("Sclafani") (collectively "defendants"), alleging discrimination on the basis of race, national origin and religion, hostile work environment, retaliation, and aiding and abetting[1] — in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, New York State Executive Law ("NYSHRL") §§ 296, 296(6), 296(7), and New York City Administrative Code ("NYCHRL") §§ 8-107, 8-107(7), 8-107(13), and 8-107(19). Muktadir also asserts a claim for assault and

---

[1] In December 2011, Muktadir filed a discrimination charge with the Equal Opportunity Employment Commission ("EEOC"). Upon the EEOC's subsequent dismissal of the charge, Muktadir timely filed this action. He filed an amended complaint on July 16, 2012. All references in this Memorandum and Order are to the later complaint.

battery under New York common law.

Defendants move to dismiss each of the claims in Muktadir's complaint, apart from assault and battery, pursuant to Rule 12(b)(6). Considering that the Court must accept as true all of the allegations in plaintiff's complaint, and draw all inferences in plaintiff's favor, *see Weixel v. Board of Educ.*, 287 F. 3d 138, 145 (2d Cir. 2002), defendants do not offer any cogent reasons why his claims should be dismissed at this pleading stage.[2]

1.  **Race and National Origin-Based Discrimination**

Muktadir alleges that he was discriminated against because he is Bangladeshi, which resulted in undesirable shift changes, reduced wages, and wrongful termination. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) ("An 'adverse employment action' . . . include[s] termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (citation omitted). In support of his claims he alleges that shortly after he started working as a food runner at Bevacco, his managers and co-workers began making daily comments calling him a "fucking Bangladeshi guy," "smelly Bangladeshi bum," "smelly bum from the jungle," "fucking Bangladeshi," and "jungle putana."[3] Compl. ¶¶ 27, 30, 37, 52. They also sniffed him

---

[2] Defendants are put on notice that subsequent patently meritless motions may subject them to Rule 11 sanctions.

[3] This term roughly translates into "prostitute," "slut," or "whore" in various languages. Muktadir also experienced physical harassment—one co-worker repeatedly hit him in the genitals, refusing to stop despite Muktadir's protests. After he formally complained to Sclafani, the offending individual was transferred to a different restaurant.

2

whenever he passed by, made retching noises, and asked aloud "How will people be able to eat when they smell this guy?" "Does he take a shower?" Muktadir complained to Sclafani about this conduct, but he failed to respond or take steps to prevent and/or remedy the situation. Compl. ¶¶ 34-36. Instead, Muktadir alleges, after he filed the first of five letter complaints, defendants changed his schedule to less busy shifts, reduced his tip earnings, issued him multiple Notices of Disciplinary Action ("NDAs") falsely charging him with "disrupting . . . management . . . and [other] employees," and terminated him. Compl. ¶¶ 39, 44, 48, 53, 63.

"[T]o establish a claim of racial [or national-origin based] discrimination under Title VII, a claimant must show that: 1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry*, 336 F.3d at 138 (citation omitted). This same standard governs discrimination claims alleged under § 1981, the NYSHRL and the NYCHRL. *See Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). Muktadir's allegations easily satisfy the requisite pleading standards.[4] *See Lopez v. Bay Shore*, 668 F. Supp. 2d 406, 414 (S.D.N.Y. 2009) ("Typically, facts that support an inference of racial animus relate to . . . comments made by individuals suggesting that they harbor racial biases."); *Hicks v.*

---

[4]"Race and national origin discrimination may present identical factual issues when a victim is born in a nation whose primary stock is one's own ethnic group . . . thus in certain circumstances . . . national origin and race discrimination may overlap." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (citation and internal quotations omitted).

3

*IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999) (finding an inference of discriminatory intent where plaintiff alleged that the defendant made derogatory comments concerning African Americans in his presence).

**2.      Religious Discrimination**

A plaintiff asserting a Title VII claim for failure to accommodate religion must allege that he "held a bona fide religious belief conflicting with an employment requirement; [] informed [his] employer[] of this belief; and [] w[as] disciplined for failure to comply with the conflicting employment requirement." *Baker v. Home Depot*, 445 F.3d 541, 546 (2d. Cir. 2006); *see also Stavis v. GFK Holding, Inc.*, 769 F. Supp. 2d 330, 335 (S.D.N.Y. 2011) (same standard governs claims under the NYSHRL and NYCHRL).

Muktadir meets his burden under Rule 12(b)(6) on his failure to accommodate claims. According to the terms of their employment, Bevacco provided its workers with an employee meal during their shifts. Muktadir states that he specifically informed defendants and Bevacco's managers that he was a practicing Muslim and could not consume pork or items that had come into contact with pork. Compl. ¶ 31. However, defendants refused to serve him employee meals conforming to his religious restrictions, and instead purposely provided him only with meals containing pork or meat that had been stored with pork. They likewise refused Muktadir's repeated requests to either cook his own food or consume non-Bevacco food obtained from outside the restaurant. Compl. ¶¶ 32-33. Muktadir alleges that his non-compliance with defendants' employee meal requirements resulted in undesirable changes to his schedule, a reduction in pay, and termination. Compl. ¶¶ 68, 71.

4

### 3.     Hostile Work Environment

While not specifically pled as separate claims, Muktadir's hostile work environment allegations withstand the liberal pleading requirements of Rule 12(b)(6). "A hostile work environment claim requires a showing [] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citation and internal quotations omitted); *see also Quinn v. Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (same standard governs state law claims). That is, a plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of h[is] employment were thereby altered." *Alfano*, 294 F.3d at 373. This requires demonstrating "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [the] work[] environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). Above all, a plaintiff must demonstrate that the hostility is "discriminatory"—that is, impermissibly based upon race, national origin, or religion. *See Alfano*, 294 F.3d at 373.

Muktadir's hostile work environment claims are supported by the insulting remarks about his Bangladeshi descent, made on a daily basis by various Bevacco managers and co-workers. He asserts that these insults were accompanied by offensive physical actions including sniffing him and commenting that he smelled so that bad customers in the restaurant would be unable to eat. Muktadir also alleges that defendants created a hostile environment because of their conduct during employee meals, including making a point of

5

serving him only pork-based foods and prohibiting him from preparing his own food or obtaining outside food. As previously discussed, he contends that despite defendants' express knowledge of his Muslim dietary restrictions, he was required to choose between eating non-conforming foods or nothing at all.

Muktadir personally perceived the resulting environment as abusive, Compl. ¶¶ 34, 49, 56, and the cumulative effect of his managers' and co-workers' comments and actions likewise created an objectively hostile work environment. *See Dawson v. Cnty. of Westchester*, 373 F.3d 265, 273 (2d Cir. 2004) ("A hostile environment claim must be evaluated on the basis of the cumulative effect of the abusive conduct."); *see also Terry*, 336 F.3d at 148 (requiring that the misconduct "create an objectively hostile or abusive work environment" and that "the victim [also] subjectively perceive th[e] environment to be abusive."). Because a number of the individuals who engaged in this conduct maintained a supervisory position over Muktadir, such conduct may be properly imputed to defendants.[5] *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) ("[Where] the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer."). Alternatively, Muktadir appropriately alleges that defendants knew of the harassment but took no action. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996) ("[Where conduct is attributed to a non-supervisor co-worker, a plaintiff] must demonstrate that [defendant] either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.").

---

[5]Aside from Sclafani, Muktadir alleges that managers Antonio Moricini, Fabio, and Loris Pignoletti participated in the harassment. Compl. ¶¶ 20, 22, 30.

6

**4.     Retaliation**

For retaliation, a plaintiff must show:  (1) that he participated in a protected activity known to defendants; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between his engaging in the protected activity and the adverse employment action.  *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006); *see also Adams v. City of New York*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011) (same standard under the NYSHRL and NYCHRL).

Muktadir's allegations satisfy the first element, as he filed numerous internal complaints with Sclafani as well as an external charge of discrimination with the EEOC.[6] Muktadir also meets the second element, alleging that he suffered from undesirable changes to his work schedule, reduced pay, issuance of non-meritorious NDAs, and termination.  *See Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006) (noting that the adverse employment action requirement is more relaxed in the retaliation context, as a plaintiff need only show that the challenged action was "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.")).  Finally, Muktadir establishes a causal connection by alleging that these adverse employment actions closely followed his internal and external complaints.  *See Gorzynski*, 596 F.3d at 110-11 ("[A] plaintiff can indirectly establish a causal connection to support a [] retaliation claim by showing that the protected activity was closely followed in

---

[6]These internal complaints were filed on November 18, 2011, November 29, 2011, January 7, 2012, January 25, 2012, and February 13, 2012.  Compl. ¶¶ 39, 44, 48, 53, 63.  As previously stated, the EEOC charge was filed in December 2011.  Defendants do not dispute receiving timely notice of its filing.

time by the adverse employment action."). Muktadir's reduction in wages and receipt of the first NDA occurred less than a month after he filed both the EEOC charge and the second internal complaint; the shift change took place within weeks of his filing the third internal complaint; he received the second NDA two weeks after the fourth internal complaint; and he was terminated less than three months after filing the fifth and final internal complaint.

5.    **Sclafani's Individual Liability**

Muktadir's allegations are also sufficient to cast individual liability on Sclafani. The amended complaint clearly states that Sclafani is Bevacco's owner, Compl. ¶¶ 13, 81, thus making him an "employer" for Title VII purposes. 42 U.S.C. § 2000e(b) (2013); *see also Wei Hong Zheng v. Wong*, 2009 WL 2601313, at *6 (E.D.N.Y. Aug. 24, 2009) (finding Title VII individual liability permitted where plaintiff alleged that individual defendant was his "employer"). Muktadir further alleges that Sclafani directly participated in the discrimination and retaliation, and that he had supervisory control over Bevacco's employees, knew of their offensive conduct, and failed to take appropriate action. Accordingly, Muktadir has sufficiently alleged that Sclafani had the type of "personal involvement" required for individual liability under § 1981 and the NYSHRL and NYCHRL. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) ("Personal liability under Section 1981 must be predicated on the actor's personal involvement. . . . Personal involvement . . . includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." (citing *Colon*, 58 F.3d at 873)); *see also Malena v. Victoria's Secret Direct*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (same standard

8

under the NYSHRL and NYCHRL).

Because Muktadir's discrimination, hostile work environment, and retaliation claims withstand Rule 12(b)(6) scrutiny, defendants' motion to dismiss the NYCHRL § 8-107(13) employer liability claim is denied. *See Cid v. ASA Inst. of Bus. & Computer Tech.*, 2009 WL 909622, at *9 (E.D.N.Y. Mar. 10, 2009) (declining to dismiss plaintiff's NYCHRL § 8-107(13) claim in light of the remaining hostile work environment and retaliation claims).

## CONCLUSION

For the above reasons, the Court denies defendants' motion to dismiss in its entirety.

**SO ORDERED.**

  /S/ Frederic Block  
FREDERIC BLOCK  
Senior United States District Judge

Brooklyn, New York  
August 13, 2013