UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
MOHAMMED MUKTADIR,

                Plaintiff,

  -against-                          **MEMORANDUM AND ORDER**
                                       Case No. 12-CV-2184 (FB) (RER)
BEVACCO INC., and PETER
SCLAFANI,

                Defendants.
-------------------------------------------------x

*Appearances:*
*for the Plaintiff:*                              *for the Defendants:*
CHRISTOPHER L. VAN DE WATER     KEVIN SEAN O'DONOGHUE
Arcé Law Group, PC                        Helbraun Levey & O'Donoghue, LLP
30 Broad Street, 35th Floor               110 William Street, Suite 1410
New York, New York 10004              New York, New York 10038

**BLOCK, Senior District Judge:**

      The jury in this action found in favor of the defendants on Mohammed Muktadir's claims for discrimination, hostile work environment and retaliation. Muktadir now moves for a new trial pursuant to Federal Rule of Civil Procedure 59. Defendants, for their part, move for attorney's fees pursuant to 42 U.S.C. § 1988. For the following reasons, both motions are denied.

### I. Motion for New Trial

      A district court may order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P.

59(a)(1)(A). Such reasons include "substantial errors . . . in admitting or excluding evidence," *Stampf v. Long Island R.R.*, 761 F.3d 192, 202 (2d Cir. 2014) (citation and internal quotation marks omitted), or, more generally, anything leading to a verdict that was a "miscarriage of justice." *Id.* (citation and internal quotation marks omitted). The decision whether to order a new is "committed to the sound discretion of the district court." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998).

Muktadir offers three reasons why a new trial is warranted. None is persuasive.[1]

## A. Evidence of Prior Complaints of Discrimination

On cross-examination, the Court allowed defense counsel to introduce evidence that Muktadir had lodged discrimination complaints against another employer, NYY steak, at about the same time he lodged complaints against defendant Bevacco. Though not identical, the complaints used similar language, such as accusations of being called "smelly" and a "jungle bum."

---

[1] Muktadir's motion lists four grounds for a new trial. The fourth, however, is simply that the cumulative effect of the first three proffered grounds "resulted in substantial prejudice to Plaintiff." Pl.'s Mem. of L. at 2. Since the Court concludes that none of the first three grounds constituted error, it need not separately address their collective impact.

2

Muktadir characterizes this line of questioning as "character assassination." He fails to recognize that the evidence had adequate probative value to justify its admission. That Muktadir claimed that he was subjected to fairly uncommon insults in two unrelated workplaces might suggest that he did not correctly recall at which workplace he heard them or, more nefariously, that they were products of his invention. In either case, a jury could reasonably infer that he was not subjected to the insults at Bevacco.

Muktadir further complains that the jury was allowed to hear that the EEOC did not substantiate either complaint. With respect to the complaint against NYY Steak, the EEOC's determination was redacted. With respect to the complaint against Bevacco, defendant Peter Sclafani—the restaurant's principal—spontaneously testified that the complaint was found to be baseless after being asked whether he was aware of the complaint. The Court promptly instructed the jury to disregard the response as irrelevant; it finds no evidence that the jury failed to follow its instruction.

Finally, Muktadir incorrectly claims that the Court later confessed error in admitting the evidence of the complaint against NYY Steak, citing the following colloquy with defense counsel:

>THE COURT: So on that nice issue about New York St[eak] . . . that's the way I sized it up. But under the rules of evidence it's not so clear exactly what its relevancy would be here.
>
>[DEFENSE COUNSEL]: Well, Your Honor, thank you for the opportunity. On the one hard, had there been damages found, we would have sought to split the damages between the two employees . . .
>
>THE COURT: I don't think that washes, but in any event . . . I gave you a little bit of play in the joint on that. Maybe I shouldn't have, but I don't want too much of that to come out, and maybe I wouldn't allow it in evidence; but these are things we talk about.

Trial Tr. at 367-68.

While the Court expressed doubt that the evidence would be relevant to defense counsel's "joint and several" theory, it did not retreat from its earlier determination that the complaint was relevant in other respects. Instead, the entire colloquy was prefaced by the following observation:

>THE COURT: We had this one evidentiary issue. There are always learning experiences, especially since I have new law clerks. So I have a motive for doing this.

*Id.* at 366. It hardly follows from the Court's candid acknowledgment that evidentiary issues are often close calls subject to debate that it admitted evidence for the sole purpose of attacking Muktadir's character.

4

## B. Comment Overheard by Juror #2

Muktadir's second ground for a new trial further emphasizes that trials unfold in the real world and present district judges with unexpected problems that require quick resolutions. Just prior to closing arguments, the Court disclosed the following to counsel outside the presence of the jury:

> THE COURT: I feel there was a faux pas. I have to correct it. I just was walking out using the facilities in the hall, Judge Weinstein's chambers are right next to mine, and . . . Judge Weinstein says: How are you? And I said: I'm okay. I said I'm doing a little stupid trial. Unbeknownst to me, juror number 3 might have heard me say that.[2]

Trial Tr. at 301.

The cold record may not reflect the ethical quandary presented. Although not disclosing the remark might have saved the Court considerable embarrassment, it would have hidden a possible improper influence on the jury. The Court considered itself duty-bound to disregard personal embarrassment in favor of full disclosure.

The Court's obligation did not end with the disclosure, however. It was also obligated to investigate. Accordingly, it questioned Juror #2—out the presence of the other jurors—who affirmed that he had not shared the overheard remark with

---

[2] The correct juror was later identified as Juror #2.

the other jurors. The Court then excused Juror #2 and allowed the remaining seven to deliberate.

Muktadir objects that Juror #2 was not immediately sequestered after overhearing the Court's remark, and was then allowed to return to the jury room to collect his things. He argues that "it cannot be said with 100% certainty" that Juror #2 did not pass on the remark during one of those two opportunities. Pl.'s Mem. of L. at 15.

*Nothing* in a trial can be said with 100% certainty. Trials take place in the real world, where accidents happen and must be dealt with as circumstances allow. The Court is thoroughly satisfied that its frank disclosure and investigation resulted in a jury that deliberated and reached its verdict free from any possible prejudice from the Court's ill-advised remark.

**C. Other Comments to Jurors**

Finally, Muktadir contends that the Court conveyed partiality in favor of the defendants and against him. His claim of pro-defendant bias is based on the following colloquy that occurred during Sclafani's testimony:

> THE WITNESS: You should come to Bevacco after all this, to support this, support all the lawyers.
>
> THE COURT: Well we are not going to do that, maybe the jurors.

6

> THE WITNESS: The food is good.
>
> THE COURT: You never can tell. You may have some customers here in the future.

Trial Tr. at 247. Based on the Court's twenty years of experience with juries, it can safety say that a single jovial exchange about the quality of Bevacco's food did not distract the jury from Muktadir's discrimination and retaliation claims or undo the Court's standard instruction that nothing it says during trial is intended to convey any opinion about the merits of those claims.

With respect to partiality against him, Muktadir claims that the Court's opening instructions conveyed anti-Muslim bias:

> THE COURT: I like to give a little bit of a patriotic speech. It won't take too long. But I've been doing this for 20 years now, and I was here at 9/11. And I will never forget it because from my chambers we saw the towers come down. So you can imagine how gripping that might have been.
>
> * * *
>
> At the present time you are going to be treated to having the privilege of serving. You can't go to Iraq, you can't go to Afghanistan, maybe some of you are young enough to do it, but this is the opportunity to serve our country.

Trial Tr. at 6, 8. It is ironic that Muktadir's charge of anti-Muslim bias stems from his own false premise that all Muslims are terrorists and that jurors cannot be

trusted to tell one group from the other. Were his premise true, the defect in our jury system would go far beyond this isolated lawsuit.

## II. Motion for Attorney's Fees

42 U.S.C. § 1988 provides that, in certain types of civil rights actions—including this one—"the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Id.* § 1988(b). Although the statute does not prescind between prevailing plaintiffs and prevailing defendants, the Supreme Court has been clear that "different equitable considerations apply." *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (quoting *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 416 (1978)). Thus, "§ 1988 authorizes a district court to award attorney's fees to a defendant 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'" *Id.* (quoting *Christianburg Garment Co.*, 434 U.S. at 421). If the plaintiff asserts both frivolous and non-frivolous claims, the statute "allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim." *Id.* at 2215.

Defendants confusingly assert that "all claims in this action were frivolous," Defs.' Mem. of L. at 4, but also asks the Court to consider that Muktadir "drop[ped] all but four actual claims by the time trial ended." *Id.* at 2. In any

8

event, the Court concludes—based on a review of the record and its familiarity with the case—that the claims that proceeded to verdict were not frivolous, and that defendants have failed to prove what fees, if any, they incurred *solely* in defending against the claims withdrawn prior to that point.

## III. Conclusion

Muktadir's motion for new trial and defendants' motion for attorney's fees are both denied.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 13, 2015